AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| United States of America | ) | | |
|---|---|---|---|
| v. | ) | | |
| Eric Devaughn McAlpine | ) | Case No. | 17-244 |
| | ) | | |
| *Defendant(s)* | ) | | |

**FILED**

DEC 0 1 2017

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __11/22/2017__ in the county of __Jefferson__ in the __Northern__ District of __Alabama__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

S/A [signature]
*Complainant's signature*

Special Agent Gabriel Brooks
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  12/01/2017

[signature]
*Judge's signature*

City and state:  Birmingham, Alabama

Staci G. Cornelius United States Magistrate Judge
*Printed name and title*



**FILED**

DEC 0 1 2017

U.S. STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Mag. No. 17-244 |
| v. | ) |
| | ) <u>UNDER SEAL</u> |
| ERIC DEVAUGHN MCALPINE | ) |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Gabriel Brooks, being first duly sworn, state that the following is true to the best of my knowledge and belief:

### INTRODUCTION

1. I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since January, 2009. I am currently assigned as a Criminal Investigator in the Birmingham Group I Field Office, Nashville Field Division. This group investigates crimes within the Bureau's jurisdiction and respective specialties. I was previously assigned to various enforcement Groups in the Atlanta Field Division after graduating from the Federal Law Enforcement Training Center and the ATF National Academy in 2009. Prior to employment with ATF, I was employed by Baltimore Police Department (Maryland) for 10 years. I served as an Officer, Detective, and Sergeant in patrol and various Investigations Divisions. In my over

18 years of experience in Law Enforcement, I have participated in hundreds of investigations pertaining to firearm, narcotic, and various other criminal enterprises. I have been the affiant on over 500 search and seizure warrants that led to the seizure of evidence.

2. I have received instruction in both general and specific courses in the recognition and identification of firearms and their place of manufacture. This training includes successfully completing the Criminal Investigator Training Program, and ATF Special Agent Basic Training, at the Federal Law Enforcement Training Center in Glynco, Georgia, and ATF's Advanced Firearms Trafficking Course in Huntsville, Alabama. I successfully completed the Baltimore City Police Academy. I have also been a member of the Army National Guard since 1995 and currently hold the rank of First Sergeant. There, I operated and maintained multiple firearms and weapons systems. I have received additional training in the recognition of firearms and their place of manufacture, by attending and successfully completing the ATF Firearms Interstate Nexus School, which was held at the National Center for Explosives Training and Research in Huntsville Alabama.

3. As a Special Agent with ATF, I have access to Federal Licensing information concerning U.S. manufacturers, importers, and dealers of firearms; including those which are licensed to do business in the State of Alabama. I also have access to the firearms records, which are required to be maintained under Federal law by those

who are Federal Firearm Licensees. I have personally toured several firearms manufacturing plants to include Glock, Remington, Advanced Armament Corporation, H&R, Adcor Defense, Bushmaster, Marlin, Parker Gun, Barnes, Dakota Arms, DPMS, and Para. Federal Law as defined by the Gun Control Act of 1968 requires that all firearms manufactured or imported into the United States bear the following markings: name of importer (if any), name of manufacturer, place of manufacture, caliber, and a unique serial number. Most firearms markings after 1968 will also indicate a model designation. I have examined various standard reference works relating to firearms and their manufacture, to verify the details of my conclusions regarding these firearms.

4. I make this affidavit in support of an application under Rules 3 and 4 of the Federal Rules of Criminal Procedure for a warrant authorizing the arrest of ERIC DEVAUGHN MCALPINE. As a Federal law enforcement officer, I am authorized to execute arrest warrants under Rule 4(c)(1) of the Federal Rules of Criminal Procedure.

5. I seek this warrant because, as explained below, there is probable cause to believe that an offense has been committed and that ERIC DEVAUGHN MCALPINE committed it. *See* Fed. R. Crim. P. 4(a).

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement

3

investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## APPLICABLE LAW

7. This investigation concerns an alleged violation of 18 U.S.C. § 922(g)(1), relating to prohibited persons (felons) in possession of firearms.

8. Title 18, United States Code, Section 922(g)(1) makes it a Federal crime for anyone who has been convicted of a felony offense to possess a firearm in or affecting interstate or foreign commerce. The elements of a violation of 18 U.S.C. § 922(g)(1) are as follows:

   a. the defendant knowingly possessed a firearm in or affecting interstate or foreign commerce; and
   b. before possessing the firearm, the defendant had been convicted of a felony – a crime punishable by imprisonment for more than one year.

## PROBABLE CAUSE SHOWING

9. On November 20, 2017, officers of the Irondale Police Department responded to a report of a burglary and theft of property in Irondale, Alabama. The victim reported that she awoke to the sound of pounding on the sliding glass door to her bedroom. The victim saw a black male who she did not recognize and did not answer. Later, the same black male broke the glass to the victim's living room window and entered her apartment. A camera was positioned in the living room and

4

captured the person entering the apartment, looking about, and leaving with the victim's back pack and a spare key to her car, a blue 2014 Hyundai Sonata, bearing Alabama license plate 1CM1767. The victim did not report the incident to the police until she discovered that her car had been stolen.

10. Irondale police obtained the video from the victim's apartment. A detective recognized the black male in the video as ERIC DEVAUGHN MCALPINE ("MCALPINE"). Irondale detectives spoke with MCALPINE's mother who also identified her son from the victim's video.

11. On November 22, 2017 at approximately 4:30 p.m., Mountain Brook Police Officer Kelly Couch observed a 2014 Hyundai Sonata traveling eastbound on Montclair Road at a high rate of speed. Officer Counch's rear facing radar indicated that the vehicle was traveling 55 mph in a 25 mph zone. Officer Couch pulled onto Montclair Road, followed the Hyundai and attempted to conduct a traffic stop by activating his emergency lights and siren. The Hyundai failed to stop, increased its speed, and continued on Montclair Road. Mountain Brook Police Department ("MBPD") dispatch informed Officer Couch that the Hyundai had been reported stolen out of Irondale. The Hyundai reached speeds in excess of 100 mph in a 40 mph zone and recklessly weaved in and out of traffic in an attempt to avoid apprehension.

12. As Officer Couch approached Cresthill Road he observed automobile parts,

dirt, and debris in the roadway. A large cloud of dust was coming from the tree line on the westbound side of Montclair Road. A MAX bus was also stopped in the westbound lane. Officer Couch got out of his patrol vehicle and approached the tree line where he observed that the Hyundai was heavily damaged and lying upside down in the wooded area. The passenger side door of the Hyundai was open and the vehicle was unoccupied.

13. A number of witnesses were interviewed. One witness described the suspect as a white male. A second witness described the suspect as a black male. Both witnesses reported that the suspect was wearing black pants and a black shirt. Neither witnessed the event, only the suspect leaving the scene and running away. Officer Couch relayed the information to dispatch.

14. MBPD Officer Shari Williams heard Officer Couch's suspect description over the radio and responded to the area. Officer Williams observed a light-skinned black male wearing a white t-shirt and black gym shorts walking through the front yard of 1325 Cresthill Road, less than 1,000 feet (according to Google maps) from the Hyundai vehicle. The male had a black hoodie tied around his waist and there was blood on the male's forehead and legs.

15. The subject was taken into custody and was identified as MCALPINE. Officer Williams transported MCALPINE to the Mountain Brook Police Department.

16. MBPD Evidence Technician, Corporal Stephens responded to the scene and processed the Hyundai for evidence. Corporal Stephens recovered a loaded Charter Arms, Pathfinder, .22 caliber revolver, bearing serial number 100976, and an unloaded Stallard Arms, Model JS-9MM, 9mm pistol, bearing serial number 073682, from the front passenger compartment of the vehicle. A "Swisher Sweets" cigarillo package was located in the center console of the Hyundai. The package contained a clear plastic baggie with 23 pills (imprinted with the letter V on one side and 2090 on the other) identified as Alprazolam (using Drugs.com). The baggie also contained one pill with "Xanax" imprinted on it.

17. On November 23, 2017, MCALPINE was provided *Miranda* warnings, as evidenced by a signed and dated MBPD constitutional rights waiver form. MCALPINE recounted that he had picked up an associate named "Vino" (who he described as a black male). He did not know "Vino's" real name. MCALPINE said he was driving and "Vino" was seated in the passenger seat. Supposedly, when the MBPD began to follow their car, "Vino" instructed MCALPINE to flee. After the wreck, "Vino" reportedly fled the scene before MCALPINE could get out of the Hyundai. MCALPINE admitted that there were two handguns in the vehicle, but claimed that the guns belonged to "Vino." MCALPINE also acknowledged the presence of Xanax bars in the car. He described how the narcotics were stored in a small clear plastic baggie. McAlpine blamed the presence of the narcotics on "Vino"

as well. Neither witness at the scene of the car accident reported seeing two separate subjects flee from the Hyundai.

18. MCALPINE was also questioned about the burglary and theft of property in Irondale, Alabama, and admitted that he entered the victim's residence through a back window. MCALPINE elaborated that he smokes with the victim, and that he was looking for his "weed."

19. The Law Enforcement Tactical System indicates that MCALPINE pled guilty to two felony offenses in 2013— Assault in the Second Degree and Robbery in the First Degree. Records maintained by Alacourt.com and the National Crime Information Center corroborate this information.

20. On November 28, 2017, an ATF Task Force Officer contacted the victim of the burglary and theft of property in Irondale, Alabama. The victim confirmed that there were no firearms in her Hyundai Sonata when it was stolen by MCALPINE. She further stated that she does not, nor has she ever owned a Charter Arms .22 caliber revolver, or a Stallard Arms JS-9mm pistol.

21. I examined the Charter Arms, Pathfinder, .22 caliber revolver, bearing serial number 100976, and Stallard Arms, Model JS-9MM, 9mm pistol, bearing serial number 073682. It is my assessment that each of the listed firearms are independently considered a "firearm," as defined in Title 18, United States Code, Section 921(a)(3), and were not manufactured in the State of Alabama. Thus, each

8

firearm traveled in or affected interstate commerce.

## CONCLUSION

22. Based on the foregoing, I have probable cause to believe that ERIC DEVAUGHN MCALPINE has committed the offense of felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1) as charged in the accompanying criminal complaint.

## REQUEST FOR SEALING

23. I request that the Court order that all papers in support of this complaint, including the affidavit and the complaint, as well as any arrest warrant that may be issued therefrom, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation and officer safety.

S/A _____
Special Agent Gabriel Brooks
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to me this 1st day of December 2017.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
United States Magistrate Judge
Northern District of Alabama